**STATE of Missouri, Plaintiff-Respondent,**

v.

**Earnest Lee LANGSTON, Defendant-Appellant.**

**No. 35411.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

Sept. 10, 1974.

Motion for Rehearing or Transfer Denied
Oct. 15, 1974.

Application to Transfer Denied
Dec. 16, 1974.

Karl F. Lang, Kevin M. O'Keefe, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, William F. Arnet, Asst. Attys. Gen., Jefferson City, Brendan Ryan, William M. Frain, Jr., St. Louis, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from his conviction and sentence for robbery with a dangerous and deadly weapon and assault with intent to kill with malice. The jury assessed his punishment at 50 years imprisonment on the former and life imprisonment on the latter; the trial judge made the sentences concurrent. No attack is leveled at the sufficiency of the evidence.

Defendant entered a neighborhood market alone. The proprietor and several children-customers were present at the time, including one Cheryl Martin, fourteen years old. The children remained in the store for several minutes after defendant entered, during which time Miss Martin observed defendant who was in close proximity and who talked with one of Miss Martin's friends. Immediately after the children left the store, defendant pulled a gun and demanded money from the proprietor, Ruth Stickler. She complied and defendant after receiving the money shot her one time through the chest and fled. Miss Martin at that time was across the street, and upon hearing the shot, turned and saw defendant run from the store, enter a car in the alley and drive off. Ms. Stickler made a positive identification of defendant a week after the robbery from her hospital bed and at trial. Miss Martin made a positive identification of defendant at trial. Defendant presented an alibi defense.

■ Defendant's first point is that the trial court abused its discretion in refusing to allow him to recall two witnesses in order to impeach the testimony of Miss Martin. After Miss Martin had testified and been excused defendant sought to recall Patrolman Gregorc who had investigated the crime to establish that during the investigation Miss Martin had ascribed a different color to the getaway car than in court, had indicated that a female occupant of the car was on a different side than described in court, and that the car turned in a different direction than described in court. The court refused to allow the recall because defendant had failed to lay a proper foundation for impeachment through prior inconsistent statements because of a failure to inquire of Miss Martin if she had in fact made such statements. The court's refusal for this reason was clearly correct. See State v. Mooring, 445 S.W.2d 303 (Mo.1969) [3, 4]; State v. Hughes, 460 S.W.2d 600 (Mo.1970) [2].

Defendant then sought to recall Miss Martin to lay the proper foundation. This the court refused because the matters upon which impeachment was sought were collateral. Whether a party should be permitted to recall a witness for the purpose of laying a foundation for impeachment which was not laid during the original cross-examination is a matter within the discretion of the trial court. State v. Neal, 350 Mo. 1002, 169 S.W.2d 686 (1943) [17, 18]; State v. Taylor, 486 S.W.2d 239, (Mo.1972) [8]. Such discretion is not abused where the impeachment is on trivial or collateral matters. State v. Taylor, *supra*, [7, 8].

In State v. Alexander, 499 S.W.2d 439 (Mo.1973) [3] the following test was applied to determine what is "collateral":

> " 'A witness has told a story of a transaction crucial to the controversy. To prove him wrong in some trivial detail of time, place or circumstance is "collateral." But to prove untrue some fact recited by the witness that if he were really there and saw what he claims to have seen, he could not have been mistaken about, is a convincing kind of impeachment . . . . To disprove such a fact is to pull out the linch pin of the story. So we may recognize this third type of allowable contradiction, namely, the contradiction of any part of the witness's account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true . . . .' "

We are unable to find that the alleged inconsistencies here were of the type described in the above quotation. They were trivial details. They were observed after Cheryl had heard a shot coming from a store where her friend of six years was alone and from which Cheryl had just seen a man with a gun emerging. Cheryl's identification of defendant was based upon her observation of him for several minutes within the store in a relaxed situation. It was not based upon her observation of him after the shot was fired. Human experience does dictate that under the circumstances Cheryl could have been mistaken about these details and still correct in her identification. The court did not abuse its discretion.

All Negroes on the jury panel were stricken by the State through use of its peremptory challenges. On the hearing for new trial the Circuit Attorney testified it was not the policy of his office to strike all Negroes where a Negro was being tried for an offense against a Caucasian. Purposeful discrimination is not to be assumed, it must be proven. Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The use of peremptory challenges in a given case to exclude most or all blacks is insufficient to establish the purposeful discrimination which is constitutionally impermissible. Swain v. State of Alabama, *supra*; State v. Davison, 457 S.W.2d 674 (Mo.1970). Defendant has shown no systematic discrimination in the selection of the jury here.

Judgment affirmed.

McMILLIAN and GUNN, JJ., concur.